IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | C O M P L A I N T |
| | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| ST. VINCENT HOSPITAL D/B/A CHRISTUS ST. VINCENT REGIONAL MEDICAL CENTER, | | |
| Defendant. | | |

## NATURE OF THE ACTION

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990 ("ADA) and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Catherine Maes. As alleged with greater particularity below, St. Vincent Hospital d/b/a Christus St. Vincent Regional Medical Center ("CSV") failed to reasonably accommodate Maes's disability and discharged her in violation of the ADA and in retaliation for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

1

U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), (3).

4.      At all relevant times, Defendant CSV, a Texas corporation, has continuously been doing business in the State of New Mexico and the City of Santa Fe and has continuously had at least 15 employees.

5.      At all relevant times, CSV has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(a), (g) and (h).

6.      At all relevant times, CSV has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Catherine Maes filed a charge with the EEOC alleging violations of the ADA by Defendant CSV.

8.      Maes filed her charge of discrimination with the EEOC on February 27, 2023.

2

9.    CSV received notice of Maes's charge of discrimination on March 9, 2023.

10.    Maes filed an amended charge of discrimination on September 19, 2023.

11.    CSV received notice of Maes's amended charge of discrimination on September 19, 2023.

12.    Maes filed a second amended charge of discrimination on October 4, 2023.

13.    CSV received notice of Maes's second amended charge of discrimination on October 4, 2023.

14.    The EEOC investigated the charges of discrimination.

15.    On August 22, 2025, the EEOC issued a Letter of Determination to CSV.

16.    In the Letter of Determination, the EEOC found reasonable cause to believe that the ADA was violated by CSV.

17.    In the Letter of Determination, the EEOC invited CSV to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

18.    The EEOC and CSV were unable to reach an agreement satisfactory to the EEOC through the conciliation process.

19.    On January 13, 2026, the EEOC issued a Notice of Failure of Conciliation to CSV.

20.    All conditions precedent to the institution of this lawsuit have been fulfilled.

**GENERAL ALLEGATIONS**

A.  **Defendant CSV**

21.    St. Vincent Hospital, doing business as CSV, is a branch hospital within the Christus Health System located in Santa Fe, New Mexico.

3

22.    In 2021 and 2022, CSV employed over 1,000 employees.

23.    Since at least 2022, CSV has engaged in unlawful employment practices at its Santa Fe location in violation of Section 102 of Title I and Section 503 of Title V of the ADA, 42 U.S.C. § 12112 and 42 U.S.C. § 12203.

### B.  Maes's Employment with CSV

24.    Maes began her employment with CSV on January 7, 2008.

25.    Maes worked at CSV's Sante Fe location.

26.    Maes started with CSV as a Medical Assistant.

27.    On April 15, 2018, Maes was promoted into a Patient Care Assistant II position.

28.    The Patient Care Assistant II position required Maes to assist patients, nurses, and providers with patient care in the clinic, greet patients, collect vital signs, obtain medical history, and perform other tasks.

29.    The Patient Care Assistant Position II required Maes to be able to lift up to 35 pounds, stoop, pick up supplies, escort patients to their examination rooms, assist patients getting in and out of their vehicles, dispose of waste, and clean equipment, among other tasks.

30.    Maes performed her job as a patient care assistant well from 2018 to 2021.

31.    From 2018 to 2021, Maes received positive performance evaluations (never below a 3 on a scale of 1 to 5) in her job as a patient care assistant and was even featured in a CSV training video.

### C.  Maes's Disability

32.    On November 4, 2021, Maes fell and injured her foot.

33.    Immediately after her injury, Maes sought emergency care for pain in her lower leg and foot.

34. During her emergency visit, the medical provider suspected Maes had fractured her foot and told her to follow up with a specialist.

35. Maes followed up with a specialist and saw a foot and ankle doctor on November 10, 2021 for continued pain in her leg and foot.

36. At this November 10 appointment, the doctor did not order imaging of Maes's foot and instead only provided her with a boot.

37. Maes's foot pain got worse during the time she wore the boot.

38. Maes then sought care from a different doctor and this doctor ordered imaging of Maes's foot and ankle.

39. The imaging showed Maes had fractured her left foot and had torn tendons.

40. Maes underwent surgery for her left foot and leg on February 10, 2022.

41. After the February 10, 2022 surgery, Maes had limited mobility in her left foot and leg, impeding her ability to walk or stand for lengthy periods of time.

42. Post-surgery, doctors diagnosed Maes with complex regional pain syndrome in her left leg and foot.

43. Maes continues to suffer from permanent complications affecting her leg and foot due to her initially untreated fracture and torn tendons.

44. Maes's physical impairments in her left leg and foot substantially limited one or more of her major life activities, including musculoskeletal function and walking.

45. CSV approved Maes for FMLA leave from November 4, 2021 until February 14, 2022.

**D. Maes's Requests for Reasonable Accommodations**

46. Maes had surgery on her foot and leg on February 10, 2022.

47.    CSV placed Maes on two weeks of leave (from February 15-27, 2022) pursuant to its Leave of Absence ("LOA") policy.

48.    On February 26, 2022, Maes returned to work at CSV with work restrictions from her doctor.

49.    These work restrictions included sedentary duty, no excessive walking, and being non-weight bearing on her left lower extremity with the use of a boot and crutches.

50.    Maes was required to use the boot for 6-8 weeks and then was required to undergo physical therapy for an estimated 5-6 weeks.

51.    Maes worked full-time at CSV on "light duty" from February 26, 2022 to May 27, 2022.

52.    Maes's "light duty" accommodations consisted of sedentary work at a desk, such as managing pap books and triaging phone calls.

53.    Although she was able to perform her light duty work, Maes could not perform certain functions of her patient assistant job due to her physical restrictions, such as escorting patients to their exam rooms, retrieving supplies for physicians, assisting with examinations, and performing vital signs.

54.    Maes's primary responsibility in the clinic, with her accommodation of light duty work, was to answer phones and direct calls and messages.

55.    During the time she performed her light duty work (from February 2022 until May 2022), Maes regularly kept CSV apprised of her medical status and the resulting limitations from her disability.

56.    This included multiple calls between Maes and CSV's Employee Health nurse.

57.    Maes would also have her doctor fax information regarding her medical status and

work restrictions to CSV.

58.     In late March or early April 2022, Maes told CSV Human Resources ("HR") and her supervisor, Amy Ortiz, that she wanted to look for another position internally within CSV that would work better with her physical restrictions.

59.     Based on CSV's policy regarding reassignment, Maes would have to apply and be selected for the new job to be transferred from her current position to the open position.

60.     HR told Maes she needed to submit applications for any transfer positions.

61.     Maes applied for approximately two positions using CSV's online portal.

62.     CSV took no action to find vacant positions for Maes.

63.     CSV did not offer Maes a vacant position.

64.     At the time Maes inquired about being transferred to an open position, CSV had job vacancies at its Santa Fe facility.

65.     One of these positions was a receptionist position called "Medical Office Specialist Women's Care Specialists."

66.     This was a position for which Maes was qualified and that would have allowed Maes to be sedentary for the duration of her shift.

67.     On May 23, 2022, Maes checked in with her assigned CSV Employee Health nurse to let her know about her current medical status.

68.     Maes discussed her restrictions, which included no excessive walking or standing, with the Employee Health nurse.

69.     Maes and the Employee Health nurse also discussed Maes's need for "continued restricted duty."

70.     That same day, on May 23, 2022, the Employee Health nurse emailed Ortiz about

Maes's restrictions and asked Ortiz if she would "continue accommodating [Maes] with restrictions."

### E. Maes's Termination

71.    On May 27, 2022, Maes received a call from HR telling her that CSV could no longer accommodate her restrictions with light duty work in the patient assistant position.

72.    HR also told Maes on this call that because she was "not yet 100 percent recovered, that [she] needed to leave the premise immediately."

73.    On June 14, 2022, CSV sent Maes a letter of termination.

74.    The letter stated that "CSV will move forward with terminating your employment effective June 30, 2022 since you are no longer able to perform the essential duties of your job position."

75.    The letter also stated Maes had been on "unofficial and official leave for six and a half months."

76.    Maes, however, had only used 3 months and 23 days of leave (from November 4, 2021 to February 27, 2022) under CSV's FMLA and LOA policies.

77.    Maes had never been disciplined for excessive use of leave or violations of any leave policy before she was terminated.

78.    In the letter of termination, CSV informed Maes that once she had "fully recovered" and had "a release for full duty," she could re-apply for any job position for which she was qualified.

79.    The letter repeated that Maes would be "eligible for rehire [only] upon her release to full duty . . . ."

80.    On the same day CSV issued Maes's termination letter, an HR assistant emailed

HR Director Angelo Valencia stating: "This Maes situation is pretty weird. . . . I'm not sure how we get from leave to termination—if you can help me tie that together, that would be awesome."

81.     Director Angelo Valencia later stated: "I believe the department was doing their best to work within her limitations, but never officially approved LOA. I did speak with Ms. Maes and she acknowledged that she still has a long recovery and doesn't have an end date in mind when she will be released."

82.     At no time before Maes's termination did Director Valencia explore reassignment as a reasonable accommodation for Maes.

83.     CSV failed to adequately engage in the interactive process to explore reassignment as a reasonable accommodation for Maes.

84.     From 2020 to 2025, CSV has not provided reassignment as a reasonable accommodation to a single employee at its Santa Fe facility.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Disparate Treatment Based on Disability and/or the Need to Provide Accommodation – 42 U.S.C. §§ 12112(a) and (b)(5)(B)**

85.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

86.     At all relevant times, Maes was an individual with a disability under 42 U.S.C.§ 12102.

87.     At all relevant times, Mes was qualified and able to perform the essential functions of a position at CSV with the accommodation of reassignment.

88.     CSV took adverse action against Maes by discharging her.

9

89.    CSV discharged Maes because of her disability and/or because of the need to make reasonable accommodation for her disability.

90.    CSV denied Maes employment opportunities because of her disability and/or because of the need to provide reasonable accommodation for her disability in violation of Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(B).

91.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Maes of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

92.    The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Maes and to deprive her of the financial and other benefits of working for CSV.

93.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

94.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Maes.

**SECOND CLAIM FOR RELIEF**
**Failure to Provide Reasonable Accommodations – 42 U.S.C. §§ 12112(a) and (b)(5)(A)**

95.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

96.    At all relevant times, Maes was an individual with a disability under 42 U.S.C.§ 12102.

97.    At all relevant times, Mes was qualified and able to perform the essential functions of a position at CSV with the accommodation of reassignment.

98. At all relevant times, Maes notified CSV of her disability and resulting limitations.

99. In late March or early April 2022, Maes requested the reasonable accommodation of reassignment to a different position.

100. After Maes made this request, CSV had an obligation to engage in the interactive process to determine if Maes was qualified, with or without reasonable accommodation, for another job within CSV and, if so, to make an active effort to reassign her to an available position.

101. CSV did not fulfill its duty to engage in the interactive process.

102. At or about the time of her request for reassignment, Maes could perform one or more vacant jobs in the CSV system, with or without reasonable accommodation.

103. This included at minimum the position of Medical Office Specialist.

104. CSV denied Maes's request for reasonable accommodation and terminated her employment.

105. By refusing to provide Maes with reasonable accommodations, CSV violated Sections 102(a) and 102(b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A).

106. The effect of the practices complained of in the foregoing paragraphs has been to deprive Maes of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

107. The effect of the practices complained of in the paragraphs above has been to inflict emotional pain, suffering, and inconvenience upon Maes and to deprive her of the financial and other benefits of working for CSV.

108.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

109.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Maes's federally protected rights.

**THIRD CLAIM FOR RELIEF**
**Retaliation – 42 U.S.C. § 12203**

110.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

111.    At all relevant times, Maes was an individual with a disability under 42 U.S.C.§ 12102.

112.    At all relevant times, Mes was qualified and able to perform the essential functions of a position at CSV with the accommodation of reassignment.

113.    By requesting reasonable accommodation from CSV, Maes engaged in protected activity under the ADA.

114.    After Maes requested accommodation, CSV discharged her.

115.    CSV discharged Maes for her protected activity, which consisted of requesting reasonable accommodation under the ADA.

116.    CSV engaged in unlawful employment practices, in violation of Section 503 of the ADA, 42 U.S.C. § 12203, by retaliating against Maes because she requested reasonable accommodation and engaged in protected activity.

117.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Maes of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

118.    The effect of the practices complained of in the paragraphs above has been to deprive Maes of the financial and other benefits of working for CSV.

## PRAYER FOR RELIEF

Wherefore, the EEOC respectfully requests that this Court:

A.  Grant a permanent injunction enjoining CSV, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against employees with disabilities.

B.  Grant a permanent injunction enjoining CSV, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against qualified individuals with disabilities because of their protected activity under the ADA, including but not limited to the employees' requests for and/or need for reasonable accommodation.

C.  Order CSV to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and prevent unlawful employment practices.

D.  Order CSV to make whole Maes by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Maes or front pay in lieu thereof.

E.  Order CSV to make whole Maes by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

F.  Order CSV to make Maes whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices under 42 U.S.C. §§ 12112(a), (b)(5)(A), and (b)(5)(B), including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.  Order CSV to pay Maes punitive damages for its malicious and reckless conduct for the unlawful practices under 42 U.S.C. §§ 12112(a), (b)(5)(A), and (b)(5)(B) described above, in amounts to be determined at trial.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

I.  Award the EEOC its costs of this action.

**JURY TRIAL DEMAND**

The EEOC requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED THIS 31st DAY OF MARCH 2026,

CATHERINE L. ESCHBACH,
Acting General Counsel

CHRISTOPHER LAGE,
Deputy General Counsel
131 M Street, N.E.
Washington, D.C. 20507

MARY JO O'NEILL
Regional Attorney

LAURIE JAECKEL
Assistant Regional Attorney

/s/Lucia Moran
Lucia Moran
Trial Attorney

14

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Albuquerque Area Office
500 Gold Ave NW, Suite 6401
Albuquerque, NM 87103
(505) 738-6723
lucia.moran@eeoc.gov

*Attorneys for Plaintiff EEOC*

PLEASE NOTE:
For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.

15